## CLEM *v.* THE STATE.

CRIMINAL LAW.—*Former Acquittal.*—*Special Plea.* — To an indictment for murder in the first degree for the killing of A., the defendant entered a special plea in bar, wherein she alleged that she had been indicted for murder in the first degree for killing one B.; that she had been tried by a jury upon said indictment for the killing of B., after having taken issue thereon by a plea of not guilty as charged therein; and that upon such trial she was found guilty of murder in the second degree, and sentenced to the state prison for life; by which finding and judgment she was acquitted of the charge of murder in the first degree as charged in said indictment; and the crime charged in said indictment, for which she was tried and acquitted, "was and is identical in all its parts, incidents, and circumstances, with the crime charged in the indictment for the killing of" A.; "that the evidence whereby alone the State will attempt to prove the indictment in this cause is the same and nowise different from that employed and produced upon the trial of the indictment on which she was acquitted of murder in the first degree; and this she is ready to verify," etc.

*Held*, that the plea was good.

*Held*, also, that the plea stated in effect that the same act caused the death of A. and B., and if the same act resulted in the death of both, there was but one crime.

*Held*, also, that it was not necessary that the plea should show that A. and B. were one and the same person.

Clem *v.* The State.

MURDER.—*Acquittal.*—If upon an indictment for murder in the first degree, the defendant is found guilty of an inferior grade of homicide, without saying any thing as to the higher grade, the finding is by implication an acquittal of the higher grade.

SAME.—*Killing of two Persons by the Same Act.*—Where two or more persons are killed by the same act, the State cannot indict the guilty party for killing one of the persons and after a conviction or acquittal indict him for killing the other.

PLEADING.—*Plea of Not Guilty.—Special Plea.*—The privilege given by statute (2 G. & H. 413, sec. 97), that in all criminal prosecutions the defendant may plead the general issue orally, and under it every matter of defence may be proved, does not take away from him the right to plead specially any defence which before that enactment might have been specially pleaded.

SAME.—*Special Plea in Bar.—Trial.*—A defendant in a criminal prosecution may plead specially a former acquittal or a former conviction in bar, and have the issue or issues joined on such plea tried separately and apart from the question of the guilt or innocence of the crime charged in the pending indictment.

SAME.—If the issue or issues joined upon a plea of former acquittal or conviction are found against the defendant, he may still enter a plea of not guilty.

SAME.—*Judgment.*—The judgment upon a plea of former acquittal or conviction, when the issues have been found against the defendant, is that he answer over.

SAME.—Upon the general issue only can a defendant in a criminal prosecution be found guilty and subjected to the penalty of the law.

SAME.—It is optional with a defendant in a criminal prosecution whether he will plead a former acquittal or conviction specially, or give the same in evidence under the plea of not guilty.

SAME.—*Practice.—Demurrer.*—The rule that it is not an available error that a demurrer has been sustained to a pleading, when there is another pleading under which the same evidence is admissible, is not applicable in criminal cases.

SAME.—*Demurrer.*—In determining the sufficiency of a plea of former acquittal or conviction, to which a demurrer has been sustained, the court cannot regard the evidence that was afterward given on the trial of the cause upon a plea of not guilty.

INSTRUCTIONS.—*Exculpatory Facts.*—On the trial of a criminal cause, it was error to instruct the jury, that if there were other facts not before them, which were exculpatory in their character, and they could have been proved by the defendant but were not, the jury might consider such failure with the other circumstances offered to show the guilt of the defendant.

SAME.—The jury were instructed as follows : " Remember that you are each responsible for the verdict you shall render, not forgetting, however, that no man can safely consider himself infallible, that no number of minds can agree upon a multitude of facts, such as this case presents, without some yielding of the judgment of individuals upon the evidence, some deference to the opinion of others, without what some might call compromise of dif-

Clem *v.* The State.

ferent views. No man who is unwilling to do this within reasonable limits, and without a sacrifice of conscience, ought to have a place in the jury box or be a member of any deliberative body."

*Held*, where the indictment was for murder in the first degree, and the evidence was all circumstantial and tended to prove murder in the first degree only, and there was a verdict of guilty of murder in the second degree, with a recommendation to executive clemency, that the charge was erroneous.

NEW TRIAL.—*Effect of Granting a New Trial.*—The legal effect of granting the appellant in this cause a new trial must be decided by the court below before it can properly be passed upon by the Supreme Court.

STATUTE CONSTRUED.— *Technical Error.*—To deprive a defendant in a criminal prosecution of the right to plead a former acquittal or conviction by a special plea, and to have the issue thus tendered tried first, and, if found against him, to have another jury try the issue on a plea of not guilty, is not a technical error within the meaning of sec. 160, 2 G. & H. 427.

INSTRUCTIONS.—*Effect of.*—Although the jury in criminal causes are made the judges of the law as well as of the facts, the charge of the court is presumed to control their minds to some extent; and when the court has misdirected the jury in a material matter of law, such misdirection is a ground for a new trial.

SAME.—Where, from the whole case, it appears that the jury might have rendered a different verdict, it may well be considered that an erroneous instruction leading to the verdict influenced them, and is good ground for a new trial.

To that part of the original opinion holding that the special plea of the defendant was good, that the averments therein were sufficient to show that the two homicides were caused by the same act, OSBORN, C. J., on petition for a rehearing, dissented.

APPEAL from the Boone Circuit Court.

DOWNEY, J.—This was an indictment for murder in the first degree against the appellant, and Silas Hartman, and William J. Abrams, found and returned by the grand jury in the Marion Criminal Court. It is stated that the grand jurors of the county of Marion and State of Indiana, impanelled, charged, and sworn to inquire of felonies and misdemeanors committed within the county of Marion, in said State of Indiana, on their oath, do present, charge, and find, that Silas Hartman, Nancy E. Clem, and William J. Abrams, all late of said county and State, and all being then and there of sound mind, on the 12th day of September in the year of our Lord one thousand eight hundred and sixty-eight, at said county of Marion and State of Indiana, did, with force

and arms, unlawfully, feloniously, purposely, and with premeditated malice, make an assault upon one Jacob Young, then and there and in the public peace being, and did then and there, with force and arms, and with guns and pistols, and with leaden balls, shot, and slugs, then and there shot off and discharged by the said Silas Hartman, Nancy E. Clem, and William J. Abrams, from said guns and pistols, at and against the said Jacob Young, him, the said Jacob Young, then and there, unlawfully, feloniously, purposely, and with premeditated malice, touch, strike, bruise, and wound, then and there and thereby giving the said Jacob Young, in and upon the head of him, the said Jacob Young, one mortal wound of the length of two inches and of the depth of six inches, of which said mortal wound the said Jacob Young then and there instantly died. And so the jurors aforesaid, on their oath aforesaid, do say, that the said Silas Hartman, Nancy E. Clem, and William J. Abrams, the said Jacob Young, then and there, in manner and form aforesaid, unlawfully, feloniously, and with premeditated malice, did kill and murder, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana.

A change of the venue was granted, on the application of the defendant, first from the judge of the criminal court, and then from the county of Marion to the county of Boone.

The defendant pleaded a former acquittal on another indictment charging her with the same crime. The State demurred to this plea, the demurrer was sustained, and the defendant excepted. She then pleaded not guilty, there was a trial by jury, and the jury failed to agree upon a verdict. At a subsequent term of the court, there was a second trial by jury, which resulted in a verdict of guilty of murder in the second degree, the jury returning with their verdict the following recommendation: "We, the jury, who have this day made our verdict in the case of *The State* v. *Nancy E. Clem*, recommend her to the clemency of the executive of the State in her behalf."

The defendant moved the court for a new trial, her motion was overruled, and final judgment, of imprisonment for life, was rendered on the verdict. Two errors are assigned in this court.

1. The sustaining of the demurrer to the plea of former acquittal; and,

2. The overruling of the motion for a new trial.

In the plea of former acquittal, the defendant alleges, that heretofore, on the 20th day of October, 1868, in the Marion Criminal Court, the grand jury, duly impanelled, sworn, and charged, etc., returned into open court an indictment, charging that Silas Hartman, Nancy E. Clem, the identical person now defendant in this action, and William J. Abrams, on the 12th day of September, 1868, at, etc., did, with force and arms, unlawfully, feloniously, purposely, and with premeditated malice, make an assault upon one Nancy Jane Young, then and there and in the public peace being, and did, then and there, with force and arms, and with guns and pistols, and with leaden balls, shot, and slugs, then and there shot off and discharged by the said, etc., from the said guns and pistols aforesaid, at and against the said Nancy Jane Young, her the said Nancy Jane Young, then and there, unlawfully, feloniously, purposely, and with premeditated malice, touch, strike, bruise and wound, then and there and thereby giving said Nancy Jane Young, in and upon the head of her, the said Nancy Jane Young, one mortal wound of the length of two inches, and of the depth of six inches, of which said mortal wound the said Nancy Jane Young, then and there instantly died. And so the jurors aforesaid on their oath aforesaid do say and find, that the said Silas Hartman, Nancy E. Clem, and William J. Abrams, the said Nancy Jane Young, then and there in manner and form aforesaid, unlawfully, feloniously, purposely, and with premeditated malice, did kill and murder, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana. And she says that the said indictment was duly signed by the prose-

cuting attorney, etc., endorsed by the foreman of the grand
jury as a true bill, filed in open court, and duly recorded.
And afterward, on the 23d day of October, 1868, etc., the
defendant having been arraigned upon said indictment and
required to plead thereto, for plea thereto then and there
said, that she was not guilty as charged therein, and after-
ward, on the 9th day of February, 1869, etc., the said case
being called in said court for trial, the parties proceeded to
impanel a jury to try the same, and on the 10th day of
February, 1869, etc., the State and the said Nancy E. Clem
having elected twelve good and lawful men, resident house-
holders of said county of Marion, the same were duly
impanelled in and by said court, and sworn upon said jury
according to law, and the said parties then and there and
thenceforward proceeded in and by said court and jury to
try said cause, and such proceedings were then and there
had in said case, that afterward, on the 1st day of March,
1869, etc., the said jury returned into court the following
verdict, to wit: "We, the jury, find the defendant guilty
of murder in the second degree as charged in the indict-
ment, and sentence her to be imprisoned in the State's prison
during life." And afterward, on the 29th day of March,
1869, etc., the said court rendered judgment upon said
verdict against the said defendant, in substance and effect as
follows: It is therefore considered by the court that said
defendant, Nancy E. Clem, for the offence aforesaid, be con-
fined in the State's prison for life, and that she pay and sat-
isfy the costs of said prosecution. And she avers and
charges that by the verdict and judgment aforesaid thereon,
she was fully acquitted of the charge of murder in the first
degree as charged in said indictment, which will more fully
appear, reference being had to the record of the proceedings
and judgment aforesaid, which she makes part of this her plea,
etc. And the said defendant avers that the crime charged
against the defendant in said indictment, and of which she
was tried and acquitted as hereinbefore set forth, by the ver-
dict of the said jury, was and is identical in all its parts,

incidents, and circumstances with the crime charged in the indictment first above in this plea specified, and to which this plea is now by her pleaded ; and that the evidence, whereby alone the said plaintiff can or will attempt to support and prove the indictment against her in this case, is the same, and nowise different from that employed and produced against her upon the trial of the indictment aforesaid; in which trial she was acquitted as hereinbefore stated of the crime of murder in the first degree. And this she is ready to verify; wherefore, etc.

The cause of demurrer to the answer was, that it did not state facts sufficient to constitute any good and sufficient plea to the indictment.

When there is a demurrer to a pleading, all the facts stated in the pleading, which are well pleaded, are to be taken as true for the purpose of determining the sufficiency of the pleading. The question is, does the pleading state facts sufficient to show that the defendant had been indicted in a court of competent jurisdiction, and tried and acquitted of the crime of murder in the first degree with which she is charged in this indictment? If so, then it is a right secured by the common law, and guaranteed by the constitution of this State, that she shall not be again put in jeopardy for the same offence. 4 Bl. Com. 335 ; Constitution of Indiana, art. 1, sec. 14.

When a defendant is charged with the crime of murder in the first degree, he may be found guilty in that degree, or he may be convicted of murder in the second degree or of manslaughter, as the evidence may justify and require. 2 G. &. H. 405, sec. 72 ; *Dukes* v. *The State*, 11 Ind. 557; *Kennedy* v. *The State*, 6 Ind. 485. If upon such an indictment the jury find the defendant guilty of an inferior grade of homicide without saying anything as to the higher grade, the verdict is, by implication, an acquittal of the higher grade of the crime. 2 G. & H. 417, sec. 110; *Weinzorpflin* v. *The State*, 7 Blackf. 186; *Brennan* v. *The People*, 15 Ill. 511 ; *Hurt* v. *The State*, 25 Miss. 378.

Two objections are urged to the plea, or to its allowance:

1. That it does not show that the crime of which the defendant was acquitted was the same as that for which she was about to to be tried ; and,

2. That the same facts might have been given in evidence under the plea of not guilty.

It is urged that the plea should show by proper allegation that the person in this indictment alleged to have been killed is the same person who was alleged to have been killed in the indictment in the former prosecution. In other words, that, in order to make it good, the plea should have alleged that Jacob Young, mentioned in the indictment in this case, is the same person as Nancy Jane Young, the person alleged to have been killed in the indictment on which the defendant was previously acquitted. But evidently this cannot be so, else when two persons are killed by the same act, and when the crime would therefore be one and indivisible, and when the State had chosen to indict the defendant and try him for the killing of one of them, there could be no plea of former acquittal when he was indicted for the death of the other produced by the same act. When, however, but one person has been killed, and in the second indictment the defendant is charged with the same crime, then, if the two indictments do not, when brought together, show that the person, charged in the second indictment to have been killed, is the same person mentioned in the first, that fact must be expressly alleged in the plea. But, if we are right in our view of the case under consideration, it is not only not necessary that the plea should contain such an allegation, but it would be impossible, consistently with the truth, that it could do so. If it be true, as we suppose it is, that the killing of two or more persons by the same act constitutes but one crime, then it follows that the State cannot indict the guilty party for killing one of the persons, and after a conviction or acquittal indict him for the killing of the other ; for the State cannot divide that which constitutes but one crime, and make the different parts of it the bases

of separate prosecutions. But when the State has prosecuted the accused for one part of the crime, she cannot again prosecute him for the other or remaining part of it. Hence, if the killing of Jacob and Nancy Jane Young resulted from the same act, and therefore one crime, and the State has prosecuted the accused for the murder of Nancy Jane Young, one part of the crime, it cannot again prosecute her for the murder of Jacob Young, the other part of the crime. The gist of the plea, therefore, in this case is, that the felonious act with which the defendant is charged in the indictment resulted in the death of both Jacob and Nancy Jane Young, and that the State, having prosecuted the defendant for part of the crime, should not prosecute for the other part.

. The plea of former acquittal is very simple in its structure. It is said to be a plea of a mixed nature, and to consist partly of matter of record, and partly of matter of fact. The matter of record is the former indictment and acquittal, the matter of fact is the averment of the identity of the offence and of the defendant as the person formerly indicted. 1 Chit. Crim. Law, 459. There is no question made in this case as to the sufficiency of that part of the plea which sets forth the matter of record, that is, the former indictment and acquittal. But the objection is, that it does not sufficiently allege the identity of the felony charged in this case with that charged in the former case, of which the defendant was acquitted. The form of the allegation of identity in the precedents is very general. Consulting some of the forms, we find it stated as follows: "That the felony and murder in the said former indictment mentioned, and the felony and murder in this present indictment mentioned, are one and the same felony and murder and not divers and different felonies and murders." Whart. Preced. 1150. "And that the felony of which he, the said A. B., was so indicted and acquitted, as aforesaid, and the felony of which he is now indicted, are one and the same felony." Bicknell Crim. Prac. 120. Under this general allegation the evidence is

admissible to show whether the felonies are in fact the same or not.

The language of the plea, with reference to the identity of the crime, is not exactly that which is used in the approved precedents, but we think it is in effect the same. It states that the crime charged against the defendant in said indictment, and of which she was tried and acquitted, was and is identical in all its parts, incidents, and circumstances, with the crime charged in the indictment upon which she was about to be tried, and that the evidence, whereby the State could and would attempt to support and prove the same, is the same, and nowise different from that employed and produced against her upon the former trial. It seems to us that this language sufficiently shows that the crimes are the same. It does not follow because one of the indictments was for the murder of Nancy Jane Young, and the other for the murder of Jacob Young, that the crime is not the same. If the same act of the defendant resulted in the death of both of them, there was but one crime. Where, by the discharge of a fire-arm, or a stroke of the same instrument, an injury is inflicted upon two or more persons, or their death is produced, there is but one crime committed. In *The State* v. *Damon*, 2 Tyler, 387, the defendant was indicted for an assault and battery on one Doty, and pleaded a former conviction on a complaint for an assault and battery committed upon one Miller, alleging that the wounding of each was by the same stroke, and at the same time. The court said, in delivering its opinion: "It appears that the defendant wounded two persons in the same affray, at the same instant of time, and with the same stroke. On a regular complaint made, he has been convicted before a court of competent jurisdiction for assaulting, beating and wounding Frederick Miller, one of those persons. He stands here indicted for assaulting, beating and wounding Elias Doty, the other of those persons; and the defendant pleads in bar the former conviction, which he alleges to have been for the same offence. The only question is, whether the defendant has

been already legally convicted of the offence charged in the indictment. Of this there can be no doubt; for it is apparent on the record, that the assault and battery charged in the indictment, and that of which he was convicted by Mr. Justice Randall, were at the same place, and in the same affray, and the wounds made by the same instrument, and by the same stroke.

"This is not a question between either of the parties injured by the assault and battery and their assailant; redress has been or may be obtained by them by private action; but it is a question between the government and its subject, and the court are clearly of the opinion that the indictment can not be sustained. The indictment charges the defendant with having disturbed the public peace by assaulting and wounding one of its citizens. For this crime he shows that he has been legally convicted by a court of competent jurisdiction. He cannot, therefore, be again held to answer in this court for the same offence."

In *The State* v. *Williams*, 10 Humph. 101, the defendant was indicted for stealing a horse, saddle, bridle, blanket and martingale, and it was decided to be but one offence. And see *Laupher* v. *The State*, 14 Ind. 327. In the *State* v. *Nelson*, 29 Me. 329, it was held that where the goods of several persons were stolen at the same time, so that the transaction is the same, one count in the indictment may embrace the whole; and in *Commonwealth* v. *Williams*, Thacher Crim. Cas. 84, the same doctrine is laid down. The court in its opinion quote, with approbation, the language of Lord HALE, 1 P. C. 531, where he says: "For it seems to me that if at the same time, the party steal goods of A. of the value of 6d., goods of B. of the value of 6d., and goods of C. of the value of 6d., being perchance in one bundle, or upon a table, or in one shop, this is grand larceny, because it is one entire felony, done at the same time, though the persons had several properties, and therefore, if in one indictment, they make grand larceny."

A case more nearly in point is *Ben* v. *The State*, 22 Ala. 9, where the defendant was indicted for administering poison

at the same time to three persons. It was objected by counsel for the prisoner that the indictment was bad because it charged the commission of several offences in one count. 1. That the prisoner administered the poison to the persons named. 2. That he caused the same to be administered. 3. That he administered and caused it to be administered to three individuals. But the court said : " We have examined these objections to the indictment with much care, and are constrained to hold that they are not well taken." See, also, *Rex* v. *Benfield*, Burr. 980; Whart. Crim. Law, secs. 390, 391, 392, 393, and authorities there cited ; and *Jackson* v. *The State*, 14 Ind. 327.

In the case under consideration, we regard the allegations of the plea of former acquittal as stating in effect that the same act caused the death of Jacob Young and Nancy Jane Young, and therefore as bringing the case within the rule established by the authorities to which we have referred.

The statute provides, that in all criminal prosecutions the defendant may plead the general issue orally, which shall be entered on the minutes of the court, and under it every matter of defence may be proved. 2 G. & H. 413, sec. 97. But this is a privilege conferred upon the defendant, and was not designed to take away from him the right to plead specially any defence which before the enactment of the section might have been specially pleaded. It is an affirmative statute and does not take away or abrogate the common law. It is expressly provided in the criminal code, that the laws and usages of this State relative to pleadings and practice in criminal actions, not inconsistent with the code, as far as the same may operate in aid thereof, or to supply any omitted case, are continued in force. 2 G. & H. 428, sec. 172. The defences which a defendant might plead specially in bar of the indictment were formerly of four kinds ; a former acquittal, a former conviction, a former attainder, and a pardon. But as attainders are prohibited in this country, Const. U. S. art. 1, sec. 10, and as pardons are not granted until after conviction, State Const. art. 5, sec.

17, the defences which a defendant may thus plead specially are reduced to two; a former acquittal, and a former conviction. It may be very important to a person charged with crime to plead specially a former acquittal or a former conviction in bar, and have that issue tried separate and distinct from the question of guilt or innocence of the crime charged in the pending indictment. This he is entitled to insist upon, and when the issue or issues thus formed are decided against him, he may still plead the general issue of not guilty. The judgment upon such plea, when it has been found against the defendant, is that he answer over. Upon the general issue only can he be found guilty, and be subjected to the penalty of the law. 4 Bl. Com. 338; 1 Chit. Crim. Law, 470, 435. It has been held that if a defendant plead a special plea, and also the general issue, it is error to compel him to go to trial on both at the same time. *Commonwealth* v. *Merrill*, 8 Allen, 545. The court say, in this case: "The argument for the Commonwealth is, that the defendant has not been injured, inasmuch as neither of the records, which he produced and offered in proof of his special pleas, showed a former conviction of the same offence for which he was then on trial," etc. "But the defendant had a right to a trial of his special pleas according to legal rules, and, as he did not waive that right, a majority of the court are of opinion that he has suffered a legal injury by being deprived of such trial." See 1 Bishop Crim. Law, sec. 438.

In this State, we think it is optional with the defendant, whether he will plead a former acquittal or a former conviction specially or give it in evidence under the general issue as authorized by the statute. If he elect to plead such defence specially, then it seems that he is entitled to have that issue tried before he is bound to plead the general issue. We are referred by counsel to civil cases, where it has been held that it is not an available error that a demurrer has been sustained to a pleading, when there is another pleading under which the same evidence is admissible. We think the rule is not

applicable in criminal cases, for the reasons already stated.

But it is urged that we may regard the evidence that was given on the trial of the cause upon the general issue which was pleaded after the sustaining of the demurrer to the plea of former acquittal, in deciding the question under consideration, and we are referred to 2 G. & H. 419, sec. 118, and 427, sec. 160. We are unable to see how we can do this. We cannot know that the evidence in the record bearing on this question is the only evidence which would have been introduced, had the defendant been allowed to try the issue presented by her plea of former acquittal. The question relating to the sufficiency of the plea was presented to the circuit court before the evidence was heard, and wholly disconnected from it. The court decided it insufficient. The question now comes before us, and we must decide it, as that court did, unaffected by the evidence which was afterward adduced upon the trial of another issue. If the crime was not the same as that of which the defendant had before been acquitted, the State had only to take issue upon the plea, and when it was found against the defendant, compel her to plead the general issue and go to trial upon the question of her guilt or innocence of the charge contained in the indictment.

If there was any other fact which could have been pleaded in avoidance of the plea, it was the privilege of the State, by her attorney, to plead the same by way of reply. We are of the opinion that the court erred in sustaining the demurrer to the plea.

The questions arising out of the overruling of the motion for a new trial are next to be considered. Among the objections urged against the regularity of the proceedings upon the trial, exception is taken to several portions of the instruction of the court to the jury. The following is the first which we shall notice: "If you have a reasonable doubt whether the material facts have all been given to you in evidence, and whether other relevant and material facts

necessary to a right understanding of the case, or any part thereof, and not in evidence, exist, and whether such facts not in evidence might lead to the just conclusion that the defendant is not guilty, and you should believe that the State could have known and produced such evidence, then you ought to find the defendant not guilty. But, if you should believe that such other facts, if exculpatory in their character, could have been proven to you by the defendant, or that, if not guilty, she could have so explained those given in evidence as to show their consistency with her innocence, and has failed to do one or the ·other, then this failure may be considered in connection with the other circumstances offered to show her guilt. Conviction cannot be had, whether the defendant does or does not disprove any of the circumstances arrayed against her, unless the circumstances proved convince you, beyond a reasonable doubt, that she is guilty as charged in the indictment." In the first sentence of this charge the jury were told, 1. That if they had a reasonable doubt whether the material facts had all been given to them in evidence; 2. Whether other relevant and material facts necessary to a right understanding of the case, or any part thereof, and not in evidence, existed; 3. Whether such facts, not in evidence, might lead to the just conclusion that the defendant was not guilty; and 4. They should believe that the State could have known and produced such evidence; then, 5. They ought to find the defendant not guilty. It is contended by counsel for the appellant, that the giving of the charge in this form, making the acquittal of the defendant to depend upon the knowledge of the State of other evidence, and its ability to produce the same, was incorrect, for the reason that it is clearly to be implied or inferred, that if the State did not know of such additional evidence, and could not produce the same, the jury might then find the defendant guilty, even though the evidence left them in reasonable doubt of the defendant's guilt. In other words, that if the jury found the first four of the propositions embraced in the sentence to be true, they might then

acquit the defendant, and that, by necessary implication, if they did not find them all true, they must find her guilty.

In the second sentence of the charge there are two things referred to; first, other facts exculpatory in their character, which could have been proved by the defendant; and, second, that she was not guilty, and could have so explained those given in evidence as to show their consistency with her innocence. The first case supposed, that is, the failure to prove exculpatory facts, which the defendant could have proved, the jury is informed, may be considered in connection with other circumstances, offered to show the defendant's guilt. It relates to facts not proved by either party, but which the defendant might have proved. It proceeds upon the supposition that there are other facts which the defendant could have proved, that those facts are exculpatory in their character, and then states that if the facts, thus known to be exculpatory in their character, are not proved by the defendant, the jury may regard her failure to do so as evidence of her guilt.

The second proposition is, that if she was innocent, and did not explain the facts given in evidence against her so as to show their consistency with her innocence, the jury might regard her failure as evidence of her guilt. If she was not guilty, it is difficult to see how her failure to explain circumstances inconsistent with her innocence could make her guilty. In the first branch of the sentence, the court speaks of facts exculpatory in their character. In the second the court speaks of "those given in evidence," meaning, we suppose, not the exculpatory facts before spoken of, but the inculpatory or criminative facts which had been given in evidence by the State against the defendant. To these last facts we understand the third sentence of the charge to relate, in which the court informed the jury that conviction could not be had, whether the defendant did or did not disprove any of the circumstances arrayed against her, unless the circumstances proved convinced them, beyond a reasonable

doubt, that she was guilty as charged in the indictment. It is quite clear, we think, that the court did not, in the last sentence of the charge, in speaking of circumstances arrayed against the defendant, allude to her failure to prove exculpatory facts, but left that part of the charge to stand as given in the second sentence of the charge. The jury were told then, without any modification or attempted correction, that if there were other facts, not before them, which were exculpatory in their character, and they could have been proved by the defendant, but were not, they might consider such failure with the other circumstances offered, to show her guilt. In *Doan* v. *The State*, 26 Ind. 495, the jury were instructed that, "when all the circumstances proved raise a strong presumption of the guilt of the accused, his failure to offer any explanation, where it is in his power to do so, tends to confirm the presumption of his guilt." In deciding the question as to the correctness of the charge, the court said: "This instruction was clearly erroneous. If the jury knew that it was in the power of the accused to offer an explanation of circumstances which, unexplained, raised a strong presumption of his guilt, that knowledge of his ability to explain these circumstances destroyed the presumption which would otherwise be indulged against the accused. The defendant was not to be convicted of burglary because he failed to satisfy the curiosity of the jury, by giving an explanation of circumstances which created no presumption of guilt against him, because the jury knew that he was able to explain them and thereby destroy any presumption which might have arisen, had the jury been uninformed of his ability to make such explanation." We are of the opinion that the instruction under consideration was erroneous and cannot be sustained.

The court also gave the following instruction to the jury: " Remember that you are each responsible for the verdict you shall render, not forgetting, however, that no man can safely consider himself infallible; that no number of minds can agree upon a multitude of facts, such as this case pre-

Clem *v.* The State.

sents, without some yielding of the judgment of individuals upon the evidence, some deference to the opinions of others, without what some might call compromise of different views. No man who is unwilling to do this within reasonable limits, and without a sacrifice of conscience, ought to have a place in the jury box, or be a member of any deliberative body."

We hesitate to sanction this as a correct exposition of the law relating to the duties of jurors. The appellant was indicted of murder in the first degree. All the evidence was wholly circumstantial, and if it showed the guilt of the defendant at all, tended to show that she was guilty of murder in the first degree, and not of murder in the second degree. The jury found her guilty of murder in the second degree, and accompanied their verdict with a recommendation of the defendant to executive clemency. It has generally been supposed that such recommendations are made in those cases only, where the accused has been only in a slight degree culpable, or guilty only of a technical breach of the criminal law. It is almost certain that this charge of the court to the jury contributed largely to the result reached by them. How many of the jurors compromised by agreeing to a verdict of guilty of murder in the second degree, in consideration that their fellows would agree to the recommendation of the defendant to executive clemency, or how many agreed to the recommendation, in consideration that their fellows would agree to the verdict of guilty of murder in the second degree, we do not know. The State has no right to ask, and does not ask, that the sanctions of the criminal law of the State shall be visited upon any of her citizens until, by competent evidence, she has satisfied the honest and conscientious judgment of twelve of her citizens, acting as a jury, beyond a reasonable doubt, of the guilt of the accused. Each juror must act upon his own judgment of the facts as they are presented to him, in the evidence adduced, and cannot rightfully yield his honest convictions to those of some one else, or even to those of all the other members of the jury. If one juror is to

yield his judgment to that of another, there should be some mode of determining which of them may adhere to his judgment, and which must yield. It is inconvenient, in most cases, to have a jury disagree, and thus make it necessary that there should be another trial of the case, but this is a necessary consequence of trial by jury. A case which comes nearest to justifying the instruction in question is that of the *Commonwealth* v. *Tuey*, 8 Cush. 1. But the case does not go to the extent of warranting the instruction given in this case. In *Boydston* v. *Giltner*, 3 Oregon, 118, which was a civil action against a physician for malpractice, the court, in charging the jury, said : " Counsel both for the plaintiff and for the defendant have remarked upon the propriety or impropriety of what they term a compromise verdict. In regard to that, it is my duty to say to you, that jurors should carefully and patiently canvass and examine all the evidence, with an honest and conscientious effort to reconcile any differences of opinion they may entertain of the truth of the matters put in issue. And it is sometimes the case, when only dollars and cents are involved, when it is probable the exact truth can never be known, and when there is an honest difference of opinion among jurors, as, for an instance, when the matter between the parties is the state of their accounts, which have been loosely kept, and there is doubt as to the true balance, that concessions may be made for the benefit of both parties, which are not fully in accord with the individual juror's view of the facts proved. But in this class of cases, each party has a right to insist that the jury, and each juror, should render a verdict, if at all, literally 'according to the law and the evidence, as given on the trial.' "

It is the duty of jurors to consider carefully every part of the evidence, and, if necessary, reconsider it, and to hear and consider the views and arguments of their fellow jurors, but at last each one of them must act upon his own judgment, and not upon that of another. This seems to be the rule contemplated by the statute, which makes it a

good ground for a new trial, "when the verdict has been decided by means other than a fair expression of opinion, on the part of all the jurors." 2 G. & H. 424, sec. 142, division 3.

There are other questions presented and argued, arising out of the motion for a new trial, but as the full bench of this court has unanimously concluded that, for the reasons already stated, the judgment must be reversed, we do not regard it necessary to examine and decide the other questions to which we have alluded.

The judgment is reversed, and the cause remanded; and the clerk is directed to certify to the warden of the state prison south, to return the defendant to the jail of Boone county.

### ON PETITION FOR A REHEARING.

OSBORN, C. J.—The counsel for the appellant raise the question of the power of the court to grant to the State a rehearing in this case. They say that the judgment of the court below having been reversed, and the warden of the State's prison having delivered her to the sheriff of the county under the order of this court in the judgment of reversal, we cannot by granting a rehearing remand her back to the state prison; that if we grant a rehearing and vacate our judgment reversing the judgment against her, the sheriff of Boone county, having once executed the judgment of the circuit court, by delivering her to the warden of the state prison, can have no power to take her there the second time on the same judgment after she has been delivered to him by the warden under a valid order of this court.

The counsel for the State ask that if we shall overrule the petition for a rehearing, for any cause, we will modify and change the opinion heretofore delivered, and that we will also express an opinion upon the effect of granting a new trial in the case, and decide, whether she must take it as to the whole case, or only as to the verdict of guilty of

murder in the second degree, leaving the verdict of not guilty of murder in the first degree to stand.

We all concur in the conclusion that the judgment of the court below was properly reversed, and that the petition for a rehearing ought to be overruled. Hence, we need not consider the question of power. We also concur in the opinion that we ought not to consider the question as to the effect of granting to the appellant a new trial, because the question is not before us. That must be decided by the court below, before it can be properly passed upon by this court. If we were to express an opinion upon it, the circuit court would not be bound by such opinion. We think it the safer and better practice for this court to avoid deciding questions not presented by the record. A majority of the court adhere to their rulings, and decline to materially modify the opinion.

I do not concur in the conclusion of the majority, that the opinion ought not to be materially modified. Since that opinion was delivered, and since the petition for a rehearing was filed, we have had the benefit of a full argument on the plea of former acquittal, as well as the other questions involved in the petition, and I can no longer concur or acquiesce in that part of the opinion which holds that the averments of identity of the two crimes are sufficient to show that the two homicides were caused by the same act. I do not consider it necessary to discuss the question at this time. I think no useful purpose would be accomplished by doing so. I only wish to state that I do not think the answer in that particular sufficiently certain, and in my opinion the demurrer to it was correctly sustained.

A majority of the court holding the answer good, we have concluded to add something to the former opinion on the question of the proper practice in such cases; and, also, as to a part of the instructions given to the jury.

Mr. Bishop, in his work on Criminal Procedure, vol. 1, p. 308, sec. 436, says, if two or more pleas involving issues to the jury are tendered together, they are not all necessa-

rily to be tried at once; and refers to the *Commonwealth* v. *Merrill*, 8 Allen, 545, in which METCALF, Judge, says: "The two issues of former conviction or former acquittal, and not guilty, are distinct, and both cannot rightly be sub-mitted to a jury at the same time."

In *The King* v. *Captain Roche*, Leach, 160, he pleaded former acquittal. The prosecutor moved that the jury might be charged at once with the issue, and that of not guilty. The court said: "Charging them with both issues at once would lead to this absurdity, that being charged with both, they would be obliged to find upon both; and yet if the first finding was for the prisoner, they could not go to the second, because that finding would be a bar. They are distinct issues, and the jury must be separately charged with them."

Mr. Bishop, on p. 418, sec. 578, of the same volume referred to, says: "There are, indeed, some instances to be found in the reports, in which, by a sort of loose practice, the two issues have been submitted together; but, where this was done, and the jury returned a verdict of guilty without passing on the other issue, a judgment rendered on the ver-dict was held to be erroneous;" and refers to *Solliday* v. *The Commonwealth*, 28 Penn. St. 13. In that case, the loose practice referred to by Mr. Bishop had been adopted by the court, and both issues of former conviction on a special plea and not guilty were submitted to the jury at the same time. The jury returned a verdict of not guilty. The low-er court refused to arrest the judgment and passed sentence upon the prisoner. The Supreme Court held that a former conviction could always be pleaded, and if its truth was established, it would be a plain bar to another judgment against the accused. If an issue of fact was formed upon the plea, it must go to a jury, and no judgment could be given in the case, until that case could be disposed of. No matter how clear the court may be against the defendant, nobody but the jury can decide an issue like that. If the jury should determine and find that the former indictment was for a different offence, and omit to find whether he was

guilty or not, he could not be sentenced, because he could not be punished without ascertaining his guilt. And for the same reason, he could not be sentenced without a verdict which would determine that he had not already been convicted for the same offence. On p. 15, the court says : " The jury have declared the defendant guilty, but that does not render the fact of his former conviction a whit more improbable than it was before." Judge BLACK, on p. 16, refers to the case of *The Commonwealth* v. *Demuth*, 12 S. & R. 389, as a case in point, and adds : " It is impossible for us to disregard a precedent so venerable without endangering the public confidence in our whole system of jurisprudence, for it all rests on *stare decisis*." In the case referred to, the prisoner pleaded not guilty, and former acquittal, upon which issue of fact was formed. Both issues were submitted to the same jury. The verdict was guilty, in the usual form. TILGHMAN, C. J., on p. 391, said : " The jury ought not to have been charged with both these issues at once, because, if they found for the defendant, on this plea of *autrefoits acquit*, no further trial ought to have been had. A former acquittal was a bar to the present indictment." In a note to 6 Cox Crim. Cases, 181, the true rule is stated : " If there was in truth no such record, or an existent record were incorrectly set forth, he might simply deny its existence, and they would be triable by the court. If an existing record were correctly set out, but it did not apply in point of fact to the offence to which it was pleaded, the Crown would traverse the identity of the offences, and this issue would be submitted to the jury."

" When a defendant pleads former acquittal or conviction, and not guilty, both issues ought not to be put to the jury at the same time. * * * Until the issue upon the plea of former acquittal, or former conviction, is disposed of, there can be no trial in chief." *Henry* v. *The State*, 33 Ala. 389.

In the case of *The State* v. *Nelson*, 7 Ala. 610, a plea of former conviction was filed, after which an issue was formed upon the plea of not guilty and a jury impanelled and sworn;

after that the jury was discharged and the cause continued. The court, on p. 613, says that the practice was very loose, and adds: " It seems to have been assumed that the issue growing out of the plea of former conviction was to be submitted to the jury at the same time as the proof of the crime. All such issues, however, are collateral, and though they may be tried by the jury summoned to pass on the trial in chief, yet it is exceedingly irregular to submit them in connection with the inquiry as to the guilt or innocence of the accused." And again, on page 614, the court says: " The whole difficulty in this case is, that the jury was prematurely sworn and irregularly impanelled; as there could be no trial in chief, until the collateral issue or plea in bar was disposed of in some way. It is true, the prisoner might have waived the collateral issue, and then had a trial of the one in chief; but the court could not compel him to do so." And the court sustained a conviction at a subsequent term, holding that the accused was not in legal jeopardy by impanelling the jury to try the issue of not guilty, whilst the collateral one of former conviction was undisposed of, without the waiver of the accused. *Danneburg* v. *The State*, 20 Ind. 181, is referred to, as in conflict with the ruling in this case. The point was not raised in that case. It is expressly declared that the question of the sufficiency of the plea was not before the court. *Neaderhouser* v. *The State*, 28 Ind. 257, held, that, although the accused might give in evidence every matter of defence under the plea of not guilty, he was not prohibited from pleading specially, and the court also held that, inasmuch as he could properly give the same matter in evidence under the plea of not guilty, the case would not be reversed on account of an erroneous ruling in striking a special plea from the files. The facts stated in the special plea in that case tendered an issue of the guilt or innocence of the accused, and must have been tried at the same time with the one on the general plea of not guilty, whilst the issue tendered by the special plea in the case at bar was a collateral one, entirely

unconnected with the guilt or innocence of the accused, and as we have seen, could not be tried with the other. In that case the accused could not be prejudiced by striking out or sustaining a demurrer to the special plea. In the case at bar, it is clear that she would.

If such plea is tendered by the prisoner, and the prosecutor demurs to it, this is an admission that the record exists as pleaded. *Commonwealth* v. *Myers*, 1 Va. Cas. 188, 229, 232. A novel assignment is not admissible in a criminal case, and the proper and only mode of replying to a plea of former conviction is to traverse the alleged identity. *Duncan* v. *The Commonwealth*, 6 Dana, 295. To such a plea, a replication of an arrest of judgment is bad; it shows the indictment was defective, or that a conviction could not have been had upon it for the offence charged in the second indictment. *Henry* v. *The State*, 33 Ala. 389. Whenever the offences charged in the first and second indictments are capable of being legally identified as the same offence, by averment, it is a question of fact for the jury to determine whether the the averments are supported and the offences the same. But when the plea of *autrefois acquit* upon its face shows that the offences are legally distinct and incapable of identification by averments, the replication of *nul tiel record* may conclude with a verification, and the court may decide the issue. *Hite* v. *The State*, 9 Yerg. 357; 1 Bishop Crim. Proced. 585, note.

But it is said, that even if the plea was a. good one, the prisoner was not prejudiced by sustaining a demurrer to it, because, under the plea of not guilty, she could introduce the same evidence and make the same defence that she could under the special plea, and that on appeal the court must give judgment without regard to technical error or defects, or to exceptions which do not affect the substantial rights of the parties. And hence the judgment ought not to be reversed on account of sustaining the demurrer to that plea. But it must not be forgotten that the laws and usages of this State, relative to pleading and practice in criminal actions,

not inconsistent with the criminal practice act, as far as the same might operate in aid thereof, or to supply any omitted case, were continued in force. 2 G. &. H. 428, sec. 172; *Hardin* v. *The State*, 22 Ind. 347; *Walker* v. *The State*, 23 Ind. 61. It had always been the privilege of a prisoner to plead former acquittal or conviction. We have seen that when pleaded, it was his right to insist upon the trial of that issue first. If that was found against him, he was entitled to another jury to try the issue on the plea of not guilty. To deprive him of that right is not a technical error or defect within the meaning of sec. 160, 2 G. &. H. 427. It prevents him from having the issues tried separately, and of trying the issue on the special plea before he is put upon his trial on his plea of not guilty. It is not enough that the same testimony might have been given in evidence under the plea of not guilty. It is the separate trial that he is entitled to. In civil cases, all the issues of fact are submitted at the same time; whilst in criminal cases, as we have already shown, the prisoner is entitled to plead specially former acquittal or conviction, and have that issue tried first, unconnected with the issue of his guilt or innocence of the charge in the indictment. So that in civil actions, when the general denial is in, it is not an available error to sustain a demurrer to a good special answer, if the facts alleged would be admissible under the general denial, because the same jury would try the issues, whether formed by special plea or the general denial; and therefore no substantial rights of the party would or could be affected. In criminal cases, the error is an available one, because the issues are not properly triable at the same time. The prisoner is of right entitled to have each issue tried by separate juries. He has a right to two trials, and it cannot be said that his substantial rights are not affected, when he is deprived of that right.

The theory that a judgment in a criminal case must not be reversed, or the verdict of a jury set aside, unless it is unsupported by the evidence, or if it appears to be supported

by the evidence, is at war with the statute, the uniform practice of the courts, and the safety of the citizen. It substitutes the peculiar and particular ideas of justice of the court or judge in each case for well established rules, regulations, and practice. The erroneous rulings of the lower court could never be corrected, unless the court of appeals should determine from the evidence that the verdict of the jury was wrong, although the verdict might have been influenced largely by such rulings. The statute provides that the court must charge the jury upon all matters of law which 'are necessary for their information in giving their verdict. Among the causes, for which a new trial may be granted, are, when the verdict has been decided by means other than a fair expression of opinion on the part of all the jurors, and when the court has misdirected the jury in a material matter of law. Now in this case, the jury were told that " they must not forget that no number of minds could agree upon a multitude of facts, such as this case presents, without some yielding of the judgment of individuals upon the evidence, some deference to the opinions of others, without what some might call a compromise of different views." They were not only to defer to the opinions of others, but they were to yield their individual judgment upon the evidence, and if they could not do so within reasonable bounds, judgment of condemnation was pronounced against them in advance, as being unfit to have a place in the jury box, or to be a member of any deliberative body. To listen to arguments, to hear reasons, to have their attention called to the evidence, the arguments of counsel, the charge of the court; to do it all patiently and with an earnest desire to harmonize views and arrive at a correct conclusion, is entirely different from yielding the judgment upon the evidence. After all the consultations of the jury, each juror must render his verdict according to his own individual judgment. There can be no such thing as yielding that, without a sacrifice of conscience. There can be no limits within which it can be yielded; hence none can be

reasonable. There can be no standard by which to test what would be reasonable and what unreasonable. They were told, however, that they must yield their individual judgment upon the evidence within reasonable limits and compromise their different views, without in any manner indicating what would be reasonable limits. Each was left to judge for himself, and under the rule prescribed, each might yield enough of his judgment, to enable them to arrive at a conclusion and render a verdict which would not be according to the individual judgment of a single juror. The verdict in such a case would not be a fair expression of opinion on the part of the jurors, and the means by which it would be decided would be a yielding of opinions upon the evidence, under the erroneous instruction of the court.

The counsel for the State call our attention to the charge that the jury must not convict unless their minds were convinced of the guilt of the accused beyond a reasonable doubt; that they were directed to examine the evidence carefully and dispassionately; to bring to the exercise of that duty their best judgment, and return into court that verdict which should commend itself to their consciences, as being in exact accord with truth and justice. The statute requires the court to instruct the jury and state to them all matters of law which are necessary for their information in giving their verdict. 2 G. & H. 417, sec. 113. And although the jury are made the judges of the law as well as of the facts in criminal cases, the charge of the court is presumed to control their minds to some extent, in deciding the case and in arriving at a verdict; so much so, that when the court has misdirected the jury in a material matter of law, such misdirection is a ground for a new trial. 2 G. & H. 423, sec. 142, clause 4. This last charge must be taken in connection with the other, and in that they were told that it was their duty to yield their individual judgments upon the evidence, and make what might be called a compromise, in order to agree upon a verdict;

and being guided by that instruction, the jury might consider it to be their paramount duty to agree upon a verdict.

If an erroneous charge is given, it "cannot be corrected by another instruction which may state the law accurately, unless the erroneous instruction be thereby plainly withdrawn from the jury. The effect of the conflicting instructions can only be to confuse the jury; and as they must follow one or the other, it is impossible to determine whether the influence of the court in such case has been exerted for good or evil." *Bradley* v. *The State*, 31 Ind. 492; *Clem* v. *The State*, 31 Ind. 480.

Exception is taken to the following language used in the opinion in this case: "It is inconvenient to have a jury disagree and thus render it necessary that there should be another trial of the case, but this is a necessary consequence of a trial by jury." We still think it better that parties should suffer the inconvenience and delay caused by a failure of the jury to agree upon a verdict, than that a verdict should be rendered against the judgment of a part of the jurors. The trial by jury in this State is based upon the theory that each juror is to decide upon the facts, as he understands them. Undoubtedly, jurors do make mutual concessions on minor matters. They are required to deliberate, decide, and make up their verdict by themselves, without aid or interference from anybody. How much each concedes, what compromises are made, what particular item of evidence is considered, or by what means the conclusion is arrived at, is not made known in the verdict. The twelve jurors must all agree upon the verdict, although they need not upon the reasons for it. Each must decide for himself. He ought not to be required "as a matter of law" to yield his individual judgment upon the evidence, in order to render a verdict. We fully appreciate the importance of a verdict in every case, but our anxiety for such a result must not be so great as to tolerate anything like dictation by the court towards the jury, or any

attempt to unduly control their action.   They must be left to a free, voluntary, conscientious verdict.   "There ought not to be anything in the conduct of the court toward the jury which would appear like pressing them to give up rational doubts or disregard difficulties which may arise in their minds upon the evidence of the case."   *The State* v. *Austin,* 6 Wis. 205.

The history of jury trials shows frequent failures to agree, and yet we require a unanimous verdict.   It has been considered better and safer to adhere to the system, to suffer the inconvenience of such failure, than to abandon it.   But if jurors may be required by courts to surrender their judgment to their fellows, the theory of unanimous verdicts is practically abrogated, and the timid, conscientious juror will be controlled by the strong-minded and determined.

We cannot say that the evidence in this case so clearly and satisfactorily establishes the guilt of the accused, beyond a reasonable doubt, that the very decided language of the charge did not exercise a controlling influence upon the minds of the jury.   It seems to us that the true rule is, that where from the whole case it appears that the jury might have rendered a different verdict, then we may well consider that an erroneous charge leading to the verdict influenced them, and is good ground for a new trial.

We do not consider it necessary to add anything to the opinion on the other branch of instructions.

The petition for a rehearing is overruled.

*J. W. Gordon, D. W. Voorhees, W. W. Leathers, J. Hanna, F. Knefler, C. C. Galvin,* and *S. C. Wessner,* for appellant.

*B. Harrison, J. T. Dye,* and *J. C. Denny,* Attorney General, for the State.