## UNITED STATES SUGAR REFINERY v. E. P. ALLIS CO.

### (Circuit Court of Appeals, Seventh Circuit.  March 14, 1893.)

### No. 65.

1. TRIAL—INSTRUCTIONS—BEST AND SECONDARY EVIDENCE.

In an action for the price of machines sold with a warranty, and erected by plaintiff upon defendant's premises, the evidence showed that the machines had been tested three times by plaintiff, and had since then remained in the possession of the purchaser without being used.  The defense was that the machines did not fulfill the warranty, and the purchaser introduced evidence showing the result of such tests.  *Held* reversible error to instruct the jury to the effect that it had been in the power of the purchaser to put the machines to actual test, to see whether they would work; that actual test is better proof than theory; that a party should produce better evidence, if he has it in his power; and that how far he should be discredited by reason of not producing such evidence is a matter for the jury,—since the distinction between best and secondary evidence has no application to such a case.

2. SAME—BUYER AND SELLER.

The rule of best and secondary evidence had no application to the case, for the purchaser supplied the only evidence in his possession, and he owed the seller no duty to make further test. but was entitled to reject the machines when tendered, and stand or fall upon the state of affairs then existing.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

Assumpsit by the E. P. Allis Company against the United States Sugar Refinery.  Plaintiff obtained judgment.  Defendant brings error.  Reversed.

Walker & Eddy, for plaintiff in error.

George W. Brown and Edward F. Gorton, for defendant in error.

Before GRESHAM, Circuit Judge, and BUNN and BAKER, District Judges.

BAKER, District Judge.  This action was brought by the defendant in error to recover the contract price of three driers, resembling, in form and construction, steam boilers.  After the starchy substances have been extracted from corn, in the manufacture of glucose, the refuse parts are passed through steam driers, and thus dried, and made fit food for animals.  The declaration contained the common counts, and the general issue was pleaded.  In November, 1889, the defendant in error entered into a contract with the plaintiff in error to construct, upon the premises of the latter, three driers, in accordance with attached drawings and specifications, for $9,500, guarantying the materials and workmanship to

be of the best, and satisfactory to the plaintiff in error. The defendant in error accordingly constructed, and placed in position, three driers, which proved unsatisfactory to the plaintiff in error; and in January, 1891, the parties entered into a second contract, whereby the defendant in error agreed to reconstruct and reset the driers, on a somewhat modified plan, with the same guaranty as in the first contract, and the contract price was raised to $10,000, to be paid when the work was completed. The defendant in error undertook to remodel the driers, and in June, 1891, claimed that it had finished them, and, after making three tests, tendered them to the plaintiff in error as complete. There was a sharp conflict in the testimony before the jury as to the result of the tests. The plaintiff in error refused to pay the contract price, alleging as a reason that the driers were leaky, and otherwise defective; and they remained on the latter's premises, unused, until the trial in the court below. Witnesses for the defendant in error testified that while the driers leaked some in places, at the first and second tests, they showed no leaks at the conclusion of the third test; and witnesses for the plaintiff in error testified that at the first test the driers leaked, and that additional leaks appeared at each of the subsequent tests. On this branch of the case the court instructed the jury as follows:

"The plaintiffs, in order to be entitled at all to demand their money, must have been able to show that the driers were not leaking, or were in shape not to leak. They say—their witnesses say—that they did attain that condition,—did put the driers in that condition. Some of the witnesses on the part of the defendant say they did not,—particularly in respect to the middle one of the driers, or more, perhaps. This is a question of fact, for you. The defendant, of course, had a right to object to the work being stopped, or to a full acceptance of the driers, until they were put in that condition. The argument is urged upon you, and it is entitled to consideration,—how much weight, is for you to consider,—that the defendants, by their subsequent conduct, have shown that these driers were tight, else they would have put them to the test. That is a consideration that you have no right to disregard. It has all the time been in the power of the defendant to put these driers in actual test, to see whether they would work, or not, and actual test, of course, is better proof than theory. It is one of the rules of evidence, which may be called to the attention of the jury, in considering the weight of evidence, that a party should produce better evidence, if he has it in his power. But how far it should be discredited by reason of his not producing that evidence is always a matter depending upon circumstances, addressed to the sound discretion of the jury."

The plaintiff in error duly excepted to this instruction, and assigns error upon it here.

The rule is elementary which requires the production of the best evidence of which the case, in its nature, is susceptible. The rule does not demand the greatest amount of evidence which can be given on the litigated fact; but its design is to prevent the introduction of any, where, from the nature of the case, the law presumes, or the proof shows, that better evidence is in the possession, or under the control, of the party. The object of the rule which requires the best evidence of which, in its nature, the case is susceptible, is the prevention of fraud. Where the law raises the presumption,

or where the proof shows, that the party has in his possession, or under his control, better evidence, it is fair to presume that the party withholds it from some sinister motive, and that, if produced, his design would be thwarted. The reason of the rule is to insure the pure administration of justice. This rule forbids the introduction of secondary evidence so long as the original and primary evidence can be had. The rule only excludes that evidence which indicates the existence of more original sources of information. That evidence which presupposes the existence of better in the possession or under the control of the party is usually designated by judges and law writers as secondary evidence. The distinction between original or primary and secondary evidence is one of law. The law excludes the secondary evidence until the loss or nonexistence of the primary evidence is shown. The rule relates to the quality, and not to the strength, of the evidence. The term "best evidence" is confined to cases where there exists, or is presumed to exist, primary as well as secondary evidence. It means only that, if the best evidence in existence is not capable of production, the next best shall be admitted. If admissible, the secondary evidence might be as cogent and influential with a court or jury as the original or primary evidence would have been. "But where there is no substitution of evidence, but only a selection of weaker, instead of stronger, proofs, or an omission to supply all the proofs capable of being produced, the rule is not infringed." 1 Greenl. Ev. § 82, and cases. "Sometimes the rule has been misunderstood, as implying that the law requires, in every case, the most convincing or credible evidence which could be produced, under the circumstances. But all the authorities agree that this is not its meaning." Best, Ev. (Chamb.) 80. "It is the offering of evidence which, in the nature of things, presupposes the existence of better evidence, which is not offered, that is ground for cautionary mention by the court, and legitimate subject for the comments of counsel, and which affects the weight of that evidence offered." Id. (Chamb. note 1) 78; 1 Tayl. Ev. § 363.

It is obvious that the well-known rule of law to which the learned judge who tried the case called the attention of the jury had no just application to the case on trial. Its purpose is to require parties to deal frankly with court and juries, to produce the best evidence in their possession or control at the time of the trial, and if it appears during the trial that the party has in his possession, or under his control, evidence which is better in quality than that which is produced, it is the duty of the court to direct the jury, in effect, to disregard the evidence produced, and to take into consideration the attempted fraud. The record in this case shows that the plaintiff in error, at the time of the trial, did not have in its possession, or within its control, any better or other evidence than it produced. It had rejected the driers, when they were tendered to it, on the ground that they did not answer the terms of the warranty. Thenceforward, the plaintiff in error refused to have anything to do with them. It neither meddled with

nor touched them, up to the time of the trial. It made no test, trial, or experiment with them after it had elected that it would not accept them. True, the driers were on the premises of the plaintiff in error, but they were quite as much in the control of the defendant in error as of the plaintiff in error. The rule stated by the court below could have been invoked against the defendant in error with the same propriety as against the plaintiff in error.

It may be true, as the jury were told, that it had all the time been in the power of the plaintiff in error to put these driers in actual test, to see whether they would work or not, and that actual test was better proof than theory. But under the state of the issues, and the evidence before the jury, it had all the time been equally in the power of the defendant in error to put the driers in actual test, to see whether they would work or not. It, however, was not a question of power. If the plaintiff in error owed the duty to the defendant in error of making further tests after it had refused to accept the driers, then the breach of that duty was a proper matter for comment by the court, and consideration by the jury. The plaintiff in error, however, had not assumed this duty by virtue of any agreement obliging it to make such further tests. We know of no rule of law which imposes the duty upon either party to an executory contract for the sale of personal property coupled with a warranty, when the purchaser has refused to accept the property, as not answering the warranty, thereafter to make further tests, trials, or experiments to see whether the property complied with the warranty. When the purchaser elects not to accept the property, as failing to comply with the warranty, he has the right to stand upon such election. Thereafter, he owes no duty to the seller to make further tests or trials. He must stand or fall on the condition of things at the time he refused to accept the property. Subsequent tests, if made, would only be valuable as they might reflect light on the character and condition of the property at the time the purchaser rejected the property tendered. The evidence offered by the plaintiff in error was primary, and not secondary, in its character. If the actual tests suggested by the court had been made, the evidence of what occurred at the time the driers were tendered and rejected would still have been of the same quality, though not perhaps of the same strength, as the evidence of these actual tests. Both would have been primary evidence, and it would have been error to reject either. The court has no right to single out one kind of primary evidence, and instruct the jury to discredit another kind of evidence, of the same quality. The plaintiff in error produced the best evidence in its possession or within its control at the time of the trial, and the court erred in instructing the jury to discredit it because it had failed to make actual tests with the driers after refusing to accept them. See Doty v. State, 7 Blackf. 427; Doan v. State, 26 Ind. 495; Clem v. State, 42 Ind. 420.

We have carefully examined the other errors assigned and argued by counsel. We think the learned trial court, as to each of

these alleged errors, announced the law fully and correctly. The questions involved in them, however, are not of sufficient importance to justify extending this opinion.

For the error above pointed out the case must be reversed, at the costs of the defendant in error, and it is so ordered.